IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| FRED IMUENTINYAN, Jr. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | |
| MERRICK GARLAND, § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### Introduction

1. Plaintiff Fred Imuentinyan, Jr., is employed by the Federal Bureau of Prisons ("BOP"). In 2020, Mr. Imuentinyan was a Drug Treatment Specialist serving at Federal Medical Center - Carswell ("FMC Carswell") in Fort Worth, Texas.

2. Mr. Imuentinyan complains of discrimination, harassment and retaliation in the pervasively hostile work environment at FMC Carswell.

### Parties

3. Plaintiff, FRED IMUENTINYAN, Jr., is an individual who resides in California.

4. Defendant, MERRICK GARLAND, is Attorney General of the United States and head of the U.S. Department of Justice, the executive branch department in which the Federal Bureau of Prisons runs the federal prison system. Service may be completed on Defendant Garland at the U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530 and on the U.S. Attorney for the Northern District of Texas, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

**Venue and Jurisdiction**

6. Venue is proper in the Northern District of Texas in the Fort Worth Division, because the cause of action accrued in the Northern District of Texas, Fort Worth Division.

7. The Court has jurisdiction under 28 U.S.C. § 1331 as Mr. Imuentinyan's claims involve questions of federal law, including 28 U.S.C. § 2201 and 42 U.S.C. § 2000e *et seq*.

**Factual Allegations**

8. From December 2019 through July 10, 2020, Fred Imuentinyan worked as a GS-11 Drug Treatment Specialist (DTS) at the Federal Medical Center in Carswell, Texas (FMC-Carswell).

9. During this period, Imuentinyan was subject to illegal discrimination and harassment as he was treated differently than other DTS staff on his schedule; and when he was assigned additional duties by his supervisor, Eric Lugo.

10. Other Drug Treatment Specialists in the Psychology Department at FMC-Carswell during this relevant time period were Anne Graham (female, white), Michelle Morse (female, white), Nathan Wiggins (male, white), Karla Williams (female, black), and Luisa Solis (female, Hispanic).

11. Lugo was the Drug Abuse Program Coordinator (DAPC) at FMC Carswell, and was Imuentinyan's first-line supervisor until approximately July 23, 2020, when Nicole Bartholomew replaced Lugo as the DAPC.

12. Daniel Kim was Imuentinyan's second line supervisor during all relevant times as the Chief Psychologist at FMC Carswell.

13. Lugo regularly addressed Imuentinyan and treated him in an annoyed and demeaning manner, including when Lugo changed the date of a program Imuentinyan was assigned to a date Imuentinyan was scheduled to be off work.

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 2**

IMUENTINYANORIGINALCOMPLAINT.wpd

14. Lugo told Imuentinyan he would have to meet with inmates in the afternoon, which was not consistent with his schedule; the schedule for the Drug Treatment group he managed was changed; and Imuentinyan was required to work on his scheduled day off.

15. Imuentinyan was falsely accused by Lugo of being late for work on multiple occasions and he was required to submit leave slips for this time when other staff members were not required to do so; Imuentinyan was told his leave slips were filled out incorrectly and he was required to resubmit them.

16. Lugo repeatedly failed to respond to Imuentinyan's requests for leave in a timely manner.

17. Imuentinyan was also subjected to a retaliatory investigation.

18. Imuentinyan was questioned on his whereabouts on a regular and daily basis; and his supervisor sent him a "welfare check text message" while he was at work.

19. On August 13, 2020, Imuentinyan became aware that he did not receive the correct pay for pay periods 15 and 16 in 2020.

20. On August 24, 2020, while in a meeting with the Human Resources Manager, Imuentinyan was asked repeatedly, beyond the point of harassment and in a manner that is best described as interrogation, if he was trying to give management a hard time.

21. On September 19, 2020, Imuentinyan observed two staff members making racially disparaging remarks about a black man's hair texture, which they described as "nappy".

22. Other examples of racially hostile conduct include:

    a. the regular and routine harassment of Plaintiff, the only black, male Drug Treatment Specialist at FMC Carswell during the relevant time period;

    b. the practice by Plaintiff's supervisor, Eric Lugo, of requiring Plaintiff, the only black, male Drug Treatment Specialist, to state reasons for leave requests, when

   other similarly situated employees who were not black males were not required to state reasons for leave requests; and

 c. the practice by Plaintiff's supervisor, Eric Lugo, of requiring Plaintiff, the only black, male Drug Treatment Specialist, to modify his work schedule, whether by requiring Plaintiff to work two afternoon phase groups per week, by a requirement that Plaintiff make up counseling sessions missed while away from FMC Carswell, and being required to work on a scheduled, compressed off-day, when other similarly situated employees who were not black males were not required to state reasons for leave requests.

23. In addition to these recent issues, Imuentinyan filed an earlier EEO complaint in October 2019 (BOP-2020-0117) that was based on similar harassing behavior by Lugo, including Lugo's refusal to sign leave request forms.

24. On September 19, 2020, Imuentinyan settled that earlier complaint informally.

25. In July 2019, Imuentinyan requested leave without pay (LWOP), to attend a clinical practicum required for his psychology doctoral program.

26. Imuentinyan submitted to his supervisors plans showing that his period of leave would not adversely affect the Psychology Department, nor the Drug Treatment program, but then Warden Michael Carr denied his request for LWOP.

27. Other similarly situated BOP employees in the Psychology Department at FMC Carswell were allowed to participate in educational opportunities that Imuentinyan sought to attend.

28. Warden Carr was not opposed to Imuentinyan's use of leave to attend the clinical practicum (explain how Fred knows this), but Lugo harassed Imuentinyan about leave forms after this date.

### Title VII Claims

29. Fred Imuentinyan alleges he was subjected to illegal discrimination and harassment in his employment at BOP, which discrimination and harassment Defendant refuses to remedy, and he

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 4**

IMUENTINYANORIGINALCOMPLAINT.wpd

alleges the discrimination and harassment violates 42 U.S.C. § 2000e *et seq*.

30. Plaintiff re-allege and incorporate by reference all of the factual allegations set out in paragraphs 8 through 28 above and he shows:

   a. he is a member of a protected class;

   b. he suffered illegal discrimination because of his gender and/or race; and

   c. he suffered damages as a result of the illegal discrimination.

31. Plaintiff also shows he:

   a. is a member of a protected class;

   b. he was subjected to illegal retaliation because he made a complaint of gender and race discrimination; and

   c. he suffered damages as a result of the illegal retaliation.

32. Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.

### Declaratory, Injunctive and Equitable Relief

33. Federal district courts have "***the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.***"[1]

34. This duty to fashion injunctive relief in Title VII cases was recognized by Fifth Circuit in *EEOC v. Rogers Bros., Inc.*, where the court said:

   **[I]njunctive relief is mandatory unless the District Court finds on the basis of clear and convincing proof that there exists no reasonable probability of further noncompliance. The burden of negating that probability lies with the defendants, and in these circumstances it will be a monumental one.**[2]

---

[1] *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). (emphasis added) (citing *Louisiana v. United States*, 380 U.S. 145, 154 (1965)).

[2] 470 F.2d 965, 966–67 (5th Cir.1972) (per curiam).

**PLAINTIFF'S ORIGINAL COMPLAINT - Page 5**

IMUENTINYANORIGINALCOMPLAINT.wpd

35. In *James v. Stockham Valves & Fittings Co.*, the Fifth Circuit also said:

**the district court is directed to reassess the evidence relative to injunctive relief. Unless it can discern and identify clear and convincing evidence that there is no reasonable probability of further noncompliance, the district court should enter a broad injunction against the [illegal discrimination].**[3]

36. Finally, in *EEOC v. Service Temps, Inc.*, the Fifth Circuit emphasized these two decisions continue to serve as "Fifth Circuit precedents".[4]

### *Non-Functioning EEO Process*

37. BOP's EEO process is a years-long, complicated bureaucratic process that provides no remedy, and this "non-functioning process" should itself be corrected by the Court.

38. In addition to his discrimination complaints, Plaintiff also asks the Court to remedy the "non-functioning" EEO process at BOP specifically and at the Department of Justice generally.

### *Declaratory, Injunctive and Equitable Relief*

39. Plaintiff contends this Court has authority to order declaratory, injunctive, and equitable relief, pursuant to 28 U.S.C. § 2201 and its inherent equitable powers, including the authority to determine Plaintiff's rights to remedial action by Defendant.

40. Plaintiff shows the Court has authority to require Defendant to take necessary steps to remedy past discrimination and harassment and to order remedial steps that are reasonably calculated to prevent future harassment, consistent with 29 C.F.R. § 1614.501 (a)(2).

### **Damages**

41. Defendant's actions and inactions caused Plaintiff to suffer damages, including past lost

---

[3] 559 F.2d 310, 354 (5th Cir. 1977).

[4] 679 F.3d 323, 338 (5th Cir. 2012).

economic damages, as well as past and future mental anguish and emotional distress, for which damages Plaintiff seeks monetary relief in this lawsuit.

### Pre-Judgment and Post Judgment Interest

42.     Plaintiff seeks pre-judgment and post judgment interest as allowed by applicable law.

### Attorney's Fees

43.     Plaintiff seeks attorney's fees as permitted by law.

### Jury Request

44.     Plaintiff requests a jury trial.

WHEREFORE, Plaintiff Fred Imuentinyan prays that Defendant Merrick Garland be cited to appear and answer herein, and that on final jury trial, Plaintiff have judgment against Defendant for damages, costs of suit, prejudgment and post-judgment interest permitted by law; for declaratory, injunctive and equitable relief; and for all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

LAW OFFICES OF WILLIAM J. DUNLEAVY

s/ *William J. Dunleavy*
William J. Dunleavy
State Bar No. 00787404
2435 North Central Expressway
12th Floor
Richardson, Texas 75080
Telephone No. 972/247-9200
Telecopier No. 972/247-9201
Email: bill@williamjdunleavy.com

ATTORNEY FOR PLAINTIFF